IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-68507-lrc |
| DONALD RENALDO WHITING, III AKA DONALD RENALDO WHITING AKA DONALD RENALDOSHANAILE WHITING, III, AKA DONALD RENALDO SHANAILEY WHITING, III, | CHAPTER: 7 |
| | JUDGE: LISA RITCHEY CRAIG |
| Debtor. | |
| PENNYMAC LOAN SERVICES, LLC, | CONTESTED MATTER |
| Movant, | |
| v. | |
| DONALD RENALDO WHITING, III AKA DONALD RENALDO WHITING AKA DONALD RENALDOSHANAILE WHITING, III, AKA DONALD RENALDO SHANAILEY WHITING, III, Debtor S. GREGORY HAYS, Trustee, | |
| Respondent(s). | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that the Movant named above has filed a Motion for Relief from the Automatic Stay and related papers with the Court seeking an Order Granting Relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom 1204, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303, at 10:00 A.M., on March 11, 2021.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including

addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Given the current public health crisis, hearings may be telephonic only.  Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone.

Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: bjordan@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-68507-lrc |
| DONALD RENALDO WHITING, III AKA DONALD RENALDO WHITING AKA DONALD RENALDOSHANAILE WHITING, III, AKA DONALD RENALDO SHANAILEY WHITING, III, | CHAPTER: 7 |
| | JUDGE: LISA RITCHEY CRAIG |
| Debtor. | |
| PENNYMAC LOAN SERVICES, LLC, | CONTESTED MATTER |
| Movant, | |
| v. | |
| DONALD RENALDO WHITING, III AKA DONALD RENALDO WHITING AKA DONALD RENALDOSHANAILE WHITING, III, AKA DONALD RENALDO SHANAILEY WHITING, III, Debtor S. GREGORY HAYS, Trustee, | |
| Respondent(s). | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant named above and shows this Court the following:

1.     This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property by a private power of sale contained in a certain Security Deed, a copy of which is attached hereto and made a part hereof.

2.      Movant is the holder or the servicer of a loan secured by certain real property in which the Debtor has an interest. Said real property is security for a Promissory Note, and is commonly known as 1162 LeHavre Court, Hampton, Georgia 30228.

3.      On or about June 1, 2017, the Debtor and Movant entered into a Loan Modification Agreement.

4.      Debtor's Statement of Intention provides for the surrender of the Property.  In addition, there has been a default in payment of the monthly installments required pursuant to the Promissory Note. As of February 2, 2021, eleven (11) payments (April 1, 2020 - February 1, 2021) have been missed.

5.      The unpaid principal balance is $174,114.33, and interest is due thereon in accordance with the Promissory Note.

6.      Because there may be little or no value in the property over the amount owed on the property, Movant is not adequately protected and should be permitted to proceed with foreclosure.

7.      Because there may be little or no equity in the property which could benefit the estate, the Trustee's interest should be abandoned.

8.      Movant shows that the provisions of Bankruptcy Rule 4001(a)(3) should be waived.

WHEREFORE, Movant prays for an Order lifting the automatic stay, authorizing it to proceed with the exercise of its private power of sale and to foreclose under its Loan Documents and appropriate state statutes.   Movant also prays that the provisions of Bankruptcy Rule 4001(a)(3) be waived, and for an award of reasonable attorney's fees, and for such other and further relief as is just and equitable.

Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: bjordan@aldridgepite.com

## NOTE

Multistate

| | | |
|---|---|---|
| **March 31, 2015** | **Lawrenceville,** | **Georgia** |
| [Date] | [City] | [State] |

**1162 LeHavre Court, Hampton, GA 30228**
**[Property Address]**

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means   **Southeast Mortgage of Georgia, Inc.**

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of   **ONE HUNDRED EIGHTY FIVE THOUSAND SIX HUNDRED SIXTY FOUR AND NO/100\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*** Dollars (U.S. **$185,664.00**          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of   **FOUR AND ONE-FOURTH**          percent ( **4.250 %**          ) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the   **1st**          day of each month beginning on **May 1, 2015.**          Any principal and interest remaining on the   **1st**          day of **April, 2045**          will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at   **3496 Club Drive**
**Lawrenceville, GA 30044**

or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$913.36.**          This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

(Check applicable box)        ☐ Graduated Payment Allonge          ☐ Growing Equity Allonge
                             ☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY

**Borrower has the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When Borrower makes a Prepayment, Borrower will tell the Lender in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the Note.**

**Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Lender will use the Prepayments to reduce the amount of Principal that Borrower owes under this Note. However, the Lender may apply the Prepayment to any accrued and unpaid interest on the Prepayment amount before applying the Prepayment to reduce the Principal amount of the Note. If Borrower makes a partial Prepayment, there will be no changes in the due date or in the amount of the monthly payment unless the Lender agrees in writing to those changes.**

### 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of   **15**          calendar days after the payment is due, Lender may collect a late charge in the amount of   **FOUR**          percent ( **4.000 %**          ) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and

**FHA Multistate Fixed Rate Note - 10/95**
Ellie Mae, Inc.                                      Page 1 of 2                              Initials: _____

all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) **Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.  WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____  **(Seal)**
DONALD WHITING

Initials: _____
P8700NOT  1214
P8700NOT
03/31/2015 11:51 AM PST

ALLONGE

█████████████████████████████

Borrower: Donald Whiting

Property Address:  1162 LeHavre Court
Hampton, GA 30228

Principal Balance: 185,664.00

Loan Date:  03/31/2015

## PAY TO THE ORDER OF

## PENNYMAC CORP.

Without Recourse

Company Name: **Southeast Mortgage of Georgia, Inc.**

By:  _Rebecca McMillan_            Vice President
(Rebecca McMillan)                    (Title)

**ALLONGE TO NOTE**

PROPERTY ADDRESS: 1162 LEHAVRE COURT, HAMPTON, GA 30228

PRINCIPAL BALANCE: $185664

BORROWER: DONALD WHITING

CO-BORROWER:

PAY TO THE ORDER OF:  PennyMac Loan Services, LLC

WITHOUT RECOURSE: PennyMac Corp.

BY _____

TITLE: Renee Lara,  Authorized Representative

**ALLONGE TO NOTE**

PROPERTY ADDRESS: 1162 LEHAVRE COURT, HAMPTON, GA 30228

PRINCIPAL BALANCE: $185664

BORROWER: DONALD WHITING

CO-BORROWER:

PAY TO THE ORDER OF:

WITHOUT RECOURSE: PennyMac Loan Services, LLC

BY _____

TITLE: Renee Lara, Authorized Representative

FILED
CLAYTON CO., GA

2015 APR -8  AM 11: 03

JACQULINE D. WILLS
CLERK SUPERIOR COURT
7832

When recorded, return to:
Southeast Mortgage of Georgia, Inc.
Attn: Final Document Department
3496 Club Drive
Lawrenceville, GA 30044

Georgia Intangible Tax Paid
$ 558.00
Date  4 - 8    2015
JACQULINE D. WILLS
Clerk, Clayton County

——— [Space Above This Line For Recording Data] ———

State of Georgia                    **SECURITY DEED**

THIS SECURITY DEED ("Security Instrument") is given on  **March 31, 2015.**          The Grantor is
**DONALD WHITING**

                                                                    and whose address is
**449 Grandiflora Drive**
**Mc Donough, GA 30253**

                                                                    ("Borrower").
"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument.
MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box
2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
**Southeast Mortgage of Georgia, Inc., a Corporation**

                                                                    ("Lender") is organized and
existing under the laws of  **Georgia,**
and has an address of  **3496 Club Drive, Lawrenceville, GA 30044.**

Borrower owes Lender the principal sum of  **ONE HUNDRED EIGHTY FIVE THOUSAND SIX HUNDRED SIXTY
FOUR AND NO/100**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* Dollars (U.S. **$185,664.00**          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on  **April 1, 2045.**
The Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under

FHA Georgia Deed of Trust - 4/96
Ellie Mae, Inc.                              Page 1 of 6                    Initials: _DW_
                                                                    GAEFHADE   0814
                                                                    GAEFHADE
                                                                    03/31/2015 11:51 AM PST

BK I 0683PG053

paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in **Clayton** County, Georgia:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**

which has the address of **1162 LeHavre Court, Hampton,**

[Street, City]

**Georgia 30228**    ("Property Address"):
         [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.
1.  Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
2.  Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**FHA Georgia Deed of Trust - 4/96**
Ellie Mae, Inc.                                Page 2 of 6                        Initials: _____

GAEFHADE  0814
GAEFHADE
03/31/2015 11:51 AM PST

BK I 0683P6054

3.  **Application of Payments**. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4.  **Fire, Flood and Other Hazard Insurance**. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds**. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation**. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  **Charges to Borrower and Protection of Lender's Rights in the Property**. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**FHA Georgia Deed of Trust - 4/96**
Ellie Mae, Inc.

Page 3 of 6

Initials: _DW_
GAEFHADE 0814
GAEFHADE
03/31/2015 11:51 AM PST

BK 1 0 6 8 3 PG 0 5 5

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.
9.  **Grounds for Acceleration of Debt.**
    (a)  **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
        (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
        (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
    (b)  **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
        (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
        (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.
    (c)  **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.
    (d)  **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
    (e)  **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.  **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.  **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14.  **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15.  **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16.  **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

**FHA Georgia Deed of Trust - 4/96**
Ellie Mae, Inc.

Page 4 of 6

Initials: _DW_

GAEFHADE  0814
GAEFHADE
03/31/2015 11:51 AM PST

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

21. Assumption not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

22. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

23. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider     ☒ Planned Unit Development Rider
☐ Graduated Payment Rider    ☒ Other(s) [specify]    *Waiver of Borrower's Rights*

Initials: DW

GAEFHADE  0814
GAEFHADE
03/31/2015 11:51 AM PST

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____    3/31/15    (Seal)
**DONALD WHITING**                                            **DATE**


_____
**Unofficial Witness**

**Notary Public** _____ **County**

Amanda Cusick
NOTARY PUBLIC
Fulton County, GEORGIA
My Commission Expires May 18, 2018

FHA Georgia Deed of Trust - 4/96
Ellie Mae, Inc.

Page 6 of 6

Initials: _____
GAEFHADE  0814
GAEFHADE
03/31/2015 11:51 AM PST



## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **31st**      day of **March, 2015,**      and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **Southeast Mortgage of Georgia, Inc., a Corporation**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:
**1162 LeHavre Court**
**Hampton, GA 30228.**

The Property Address is a part of a planned unit development ("PUD") known as **Summer Gate at Stoney Creek**

    **PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**FHA Multistate PUD Rider - 10/95**
Ellie Mae, Inc.                 Page 1 of 2               Initials: _____
                                                                P8700PUU  0508
                                                                  P8700PUU
                                               03/31/2015 11:51 AM PST



BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____    3/31/15 (Seal)
**DONALD WHITING**                                                   **DATE**

FHA Multistate PUD Rider - 10/95
Ellie Mae, Inc.                                    Page 2 of 2

Initials: _____
P8700PUU  0508
P8700PUU
03/31/2015 11:51 AM PST

GEORGIA -

Grantor: **Donald Whiting**

Date:  **March 31, 2015**

Property Address:  **1162 LeHavre Court**
**Hampton, GA 30228**

Lender:  **Southeast Mortgage of Georgia, Inc.**

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

**DONALD WHITING**                                    3/31/15
                                                        **DATE**

**Unofficial Witness**

Notary Public,      County

Amanda Cusick
NOTARY PUBLIC
Fulton County, GEORGIA
My Commission Expires May 18, 2018

Ellie Mae, Inc.                        Page 1 of 2                        GABORWAV   1011
                                                                          GABORWAV
                                                                          03/31/2015 11:51 AM PST

**CLOSING ATTORNEY'S AFFIDAVIT**

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me

3 - 3-15

on the date set forth above.

_____
Notary Public

_____
Closing Attorney

BK1 0683PG0062

## EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 113 and 129 of the 5th and 6th District, Clayton County, Georgia, being Lot 132, of Summer Gate @ Stoney Creek Subdivision, Phase III, per plat thereof recorded in Plat Book 40 , Page 117-120 , Clayton County, Georgia Records, which recorded plat is incorporated herein by reference and made a part of this description.

Parcel ID Number:

BK10683PG063

Exhibit A (Legal Description - Letter)                                    GA-019-00493-15-PUR

BK DEED V: 11402 P: 291
10/15/2018 05:04 PM
2018005178  Pages: 2  Fees: $5.00
Jacquline D. Wills
Clerk of Superior Court, Clayton County, GA
eFile Participant IDs:

This Instrument Prepared By:
**SUSAN TAYLOR**
After Recording Return To:
**OLD REPUBLIC SERVICING SOLUTIONS**
**P.O. BOX 250**
**ORANGE, CA 92856**

**Assignment of Security Deed**

For value received, Mortgage Electronic Registration Systems, Inc., as nominee for SOUTHEAST MORTGAGE OF
GEORGIA, INC., its successors and assigns, whose address is P.O. Box 2026, Flint, MI 48501-2026, hereby grants,
assigns, and transfers to: **PennyMac Loan Services, LLC,** whose address is 3043 Townsgate Road, Suite 200,
Westlake Village, CA 91361 under that certain Security Deed dated March 31, 2015 executed by:

Grantor: DONALD WHITING

For Mortgage Electronic Registration Systems, Inc., as nominee for SOUTHEAST MORTGAGE OF GEORGIA,
INC., its successors and assigns, whose address is P.O. Box 2026, Flint, MI 48501-2026 in the amount of:
$185,664.00, recorded 04/08/2015 in Book/Volume: 10683 Page: 053 of the Official Records of Clayton County,
Georgia

Property Address: 1162 LEHAVRE COURT, HAMPTON, GEORGIA 30228
Legal Description: SEE EXHIBIT A

Accommodation

Mortgage Electronic Registration Systems, Inc., as
nominee for SOUTHEAST MORTGAGE OF GEORGIA,
INC., its successors and assigns

WITNESS:
Robert Taylor

BY:

SIGNER NAME:
SIGNER TITLE:   Linda Cobb, Assistant Vice President

Dated:   OCT 1 2 2018

State of **TEXAS**
County of **TARRANT**

Subscribed and sworn to (of affirmed) before me on _____ OCT 1 2 2018 _____, by
**Linda Cobb, Assistant Vice President**
_____, proved to me on the basis of satisfactory
evidence to be the person(s) who appeared before me.

(seal)



HILDA MIREYA DE LA CRUZ
Notary ID #126856740
My Commission Expires
July 5, 2021

Notary Public, State of **TEXAS**   Hilda Mireya De La Cruz
My Commission Expires: _____
02/05/21

### EXHIBIT A

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT
113 AND 129 OF THE 5TH AND 6TH DISTRICT, CLAYTON COUNTY, GEORGIA,
BEING LOT 132, OF SUMMER GATE @ STONEY CREEK SUBDIVISION, PHASE
III, PER PLAT THEREOF RECORDED IN PLAT BOOK 40 , PAGE 117-120 ,
CLAYTON COUNTY, GEORGIA RECORDS, WHICH RECORDED PLAT IS
INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS
DESCRIPTION.

Donald  Whiting

1162 Lehavre Ct
Hampton GA 30228

*(Space above reserved for Recorder of Security Instruments certification)*

**Title of Document:** HOME AFFORDABLE MODIFICATION AGREEMENT

**Date of Document:** MAY 8, 2017

**Grantor(s):** DONALD WHITING

**Grantor(s) Mailing Address:** 1162 LEHAVRE COURT, HAMPTON, GEORGIA 30228

**Grantee(s):** PENNYMAC LOAN SERVICES LLC

**Grantee(s) Mailing Address:** 6101 CONDOR DRIVE, MOORPARK, CALIFORNIA 93021

**Legal Description:**
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 113 AND 129 OF THE 5TH AND 6TH DISTRICT, CLAYTON COUNTY, GEORGIA, BEING LOT 132, OF SUMMER GATE @ STONEY CREEK SUBDIVISION, PHASE ILL, PER PLAT THEREOF RECORDED IN PLAT BOOK 40, PAGE 117-120, CLAYTON COUNTY, GEORGIA RECORDS, WHICH RECORDED PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.
A.P.N.: 05113BD023

Prepared by: German Rivas
PennyMac Loan Services LLC
Address: 6101 Condor Drive
Moorpark, CA 93021

**Reference Book and Page(s):** Book: 10683, Page: 00053

*(If there is not sufficient space on this page for the information required,
state the page reference where it is contained within the document.)*

RECORDER'S COVER PAGE
RCP.CST 11/26/14

DocMagic *eForms*
www.docmagic.com

After Recording Return To:
PENNYMAC LOAN SERVICES LLC
6101 CONDOR DRIVE
MOORPARK, CALIFORNIA 93021
███████████████████

———————————— [Space Above This Line For Recording Data] ————————————

Investor Loan #: FHA Case No████████████

# HOME AFFORDABLE MODIFICATION AGREEMENT

████████████████████████  | MERS Phone: 888-679-6377

Borrower ("I")[1]:  DONALD WHITING

Lender or Servicer ("Lender"): PENNYMAC LOAN SERVICES LLC

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): MARCH 31,
2015
███████████████

Property Address ("Property"):  1162 LEHAVRE COURT, HAMPTON, GEORGIA 30228

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home
Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the
Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may
previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement
and not defined have the meaning given to them in Loan Documents.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying
the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

---

DocMagic *eForms*
www.docmagic.com

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the Lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G. I have made or will make all payments required under a Trial Period Plan.

*[Check box if following applies:]*
☐ H. I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgments and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - MERS
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Page 2 of 9
Form 3157 3/09 (re. 10/10)
GA3157Z.LMA 09/20/16

DocMagic *eForms*
www.docmagic.com



automatically become modified on JUNE 1, 2017 (the "Modification Effective Date")
and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any
payments as a precondition to this modification under a Trial Period Plan, this modification will not take effect.
The first modified payment will be due on JUNE 1, 2017

A. The Maturity Date will be: MAY 1, 2047

B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due
as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and
other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid
to the Lender but not previously credited to my Loan [Check box if following applies: ☐ and less
Principal in the amount of $ N/A which has been forgiven]. The new principal
balance of my Note will be $ 183,622.33 (the "New Principal Balance"). I understand that
by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts
accrue interest based on the interest rate in effect under this Agreement. I also understand that this means
interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which
would not happen without this Agreement.

C. Interest at the rate of 4.000 % will begin to accrue on the New Principal Balance as of
MAY 1, 2017 and the first new monthly payment on the New Principal Balance will
be due on JUNE 1, 2017 . My payment schedule for the modified Loan is as
follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|---------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1-31 | 4.000% | 05/01/2017 | 876.64 | 468.65 | 1,345.29 | 06/01/2017 | 360 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my
total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan
Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - MERS
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157 3/09 (re. 10/10)
GA3157Z.LMA 09/20/16

Page 3 of 9

DocMagic *eForms*
www.docmagic.com

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.   **Additional Agreements.** I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other Workout Plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.   That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these

DocMagic eForms
www.docmagic.com



sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - MERS
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Page 5 of 9
Form 3157  3/09  (rev. 10/10)
GA3157Z.LMA  09/20/16

DocMagic ᴄＦᴏʀᴍˢ
www.docmagic.com

N.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

*[Check box if following applies:]*

☐  P.  If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)


**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

*DocMagic eForms*
*www.docmagic.com*

In Witness Whereof, the Lender and I have executed this Agreement.

Signed, sealed and delivered in the presence of:

Unofficial Witness

Michael Drawdy
Senior Vice President

Lender PENNYMAC LOAN SERVICES
LLC

By: _____

Mortgage Electronic Registration Systems, Inc.

Date _____

Karen Denton
Assistant Secretary

Notary Public, _____ County

Signed, sealed and delivered in the presence of:

Unofficial Witness

_____ (Seal)
DONALD WHITING                -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Notary Public, _____ County

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - MERS
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Page 7 of 9
Form 3157  3/09  (rev. 10/18)
GA3157Z.LMA  09/20/16

DocMagic eForms
www.docmagic.com



———————————————— [Space Below This Line For Acknowledgment] ————————————————

**LENDER ACKNOWLEDGMENT**

State of   GEORGIA

County of   HENRY

Signed or attested before me on ————————————————————————————————— by
(date)

————————————————————————————————————————————
————————————————————————————————————————————
————————————————————————————————————————————
(name of signer)

who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

☐ Personally Known

or

☐ Produced Identification

Type and # of ID (last 4 digits) ————————————

ID Expiration Date ————————————

————————————————————————
(Notary signature)

————————————————————————
(Notary name typed, stamped or printed)

Notary Public, State of Georgia

(Stamp/Seal)                    My commission expires: ————————

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - MERS
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Page 8 of 9
Form 3157  3/09  (re. 10/10)
GA3157Z.LMA  09/20/16

*DocMagic eForms*
www.docmagic.com

## ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California Ventura
County of _____ )

On _May 22, 2017_____ before me, ___ German A. Rivas, Notary Public

(insert name and title of the officer)

personally appeared _____ MICHAEL DRAWDY AND KAREN DENTON_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

GERMAN A. RIVAS
Notary Public - California
Ventura County
Commission # 2172768
My Comm. Expires Nov 19, 2020

Signature _____       **(Seal)**

**BORROWER ACKNOWLEDGMENT**

State of ___GEORGIA___

County of ___FAYETTE___

Signed or attested before me on ___18th May 2017___ by
(date)

___DONALD WHITING___

_Donald Whiting_
(name of signer)

who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

☐ Personally Known

or

☑ Produced Identification

Type and # of ID (last 4 digits) _Drivers License_ ████

ID Expiration Date _12/30/2019_

_K P Copeland_
(Notary signature)

_Kia P. Copeland_
(Notary name typed, stamped or printed)

Notary Public, State of Georgia

My commission expires: _July 10, 2017_

This document was prepared by:

Loan Originator: N/A, NMLSR ID ████
Loan Originator Organization: ████

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - MERS
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Page 9 of 9
Form 3157  3/09  (re. 10/10)
GA3157Z.LMA  09/20/16

DocMagic *eForms*
www.docmagic.com





# PAYMENT LETTER TO BORROWER

FROM:    PENNYMAC LOAN SERVICES LLC
         6101 CONDOR DRIVE
         MOORPARK, CALIFORNIA 93021

RE:      ████████████

         Property Address:   1162 LEHAVRE COURT, HAMPTON, GEORGIA 30228


TO:      DONALD WHITING
         1162 LEHAVRE COURT
         HAMPTON, GEORGIA 30228


Dear Borrower:

The monthly payments on the above referred to loan are to begin on     JUNE 1, 2017       , and will continue
monthly until       MAY 1, 2047

Your monthly payment will consist of the following:

| | |
|---|---:|
| **PRINCIPAL AND INTEREST** | $    876.64 |
| **MMI/PMI INSURANCE** | |
| **ESCROW FOR TAXES** | 225.73 |
| **ESCROW FOR INSURANCE** | 119.20 |
| **ESCROW FOR FLOOD INSURANCE** | 0.00 |
| FHA  INSURANCE | 123.72 |
| | |
| **TOTAL MONTHLY PAYMENTS** | $   1,345.29 |

You are to make your payments to:
         PENNYMAC LOAN SERVICES LLC
         6101 CONDOR DRIVE
         MOORPARK, CALIFORNIA 93021


Any correspondence, or calls, in reference to your loan, please refer to the above loan number.


PAYMENT LETTER TO BORROWER
PAYMENT.LSR  12/13/16                        Page 1 of 2                        DocMagic eForms
                                                                               www.docmagic.com



Copy received and acknowledged.

Date: _5/18/2017_ _____    _____
                                       DONALD WHITING

PAYMENT LETTER TO BORROWER
PAYMENT.LSR  12/13/16                         Page 2 of 2                    DocMagic *eForms*
                                                                            www.docmagic.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | Case No. 18-68507-LRC |
| DONALD RENALDO WHITING, III AKA DONALD RENALDO WHITING AKA DONALD RENALDOSHANAILE WHITING, III, AKA DONALD RENALDO SHANAILEY WHITING, III, | Chapter 7 |
| Debtor. | |

**CERTIFICATE OF SERVICE**

This is to certify that on this day I electronically filed the foregoing **Notice of Hearing and Motion for Relief from the Automatic Stay** using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

E. L. Clark                                    S. Gregory Hays

I further certify that on this day I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid on the following parties set forth below at the address shown for each.

Donald Renaldo Whiting, III
1162 Lehavre Court
Hampton, GA 30228

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: February 9, 2021

_____
Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center  3575 Piedmont Road,
N.E., Suite 500  Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: bjordan@aldridgepite.com