UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| DONALD RENALDO WHITING, III, | : | CASE NO. 18-68507-LRC |
| | : | |
| Debtor. | : | |
| | : | |

### APPLICATION TO EMPLOY REAL ESTATE AGENT
### UNDER LISTING AGREEMENT

COMES NOW S. Gregory Hays, Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate of Donald Renaldo Whiting, III ("**Debtor**"), and moves this Court for an Order authorizing him to employ Humphries & King Realty and John V. Ball (collectively, "**Humphries & King**") as listing agent for the Estate (the "**Application**"), and respectfully shows this Court as follows:

1. On November 3, 2018 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code, initiating Case No. 18-68507-LRC (the "**Case**").

2. On January 13, 2021, Debtor filed a *Motion to Convert Case to Chapter 7* [Doc. No. 44].

3. On January 14, 2021, the Case was converted to a proceeding under Chapter 7, at which time the Trustee was appointed to the Case as interim Chapter 7 Trustee under 11 U.S.C. § 701(a)(1).

4. The original Chapter 7 meeting of creditors was held and concluded on February 18, 2021 in accordance with 11 U.S.C. § 341(a).

16508056v1

5.  At the commencement of the Case, the bankruptcy estate was created under 11 U.S.C. § 541(a) (the "**Bankruptcy Estate**"), and the Bankruptcy Estate includes all Debtor's legal or equitable interests in property as of the commencement of the Case and any interest in property that the Bankruptcy Estate acquired after commencement of the Case. 11 U.S.C. §§ 541(a)(1) and (7).

6.  On April 22, 2021, Trustee filed his *Application to Appoint Attorney for Trustee* [Doc. No. 64], and on April 28, 2021, the Court entered an *Order* [Doc. No. 65] authorizing the appointment of Arnall Golden Gregory LLP as attorneys for Trustee, subject to objection.

### The Property

7.  On his *Schedule A/B: Property* as amended on January 13, 2021 [Doc. No. 46 at page 8 of 42], Debtor scheduled his sole ownership interest in that certain improved real property known generally as 1162 Lehavre Court, Hampton, Clayton County, Georgia 30228 (the "**Property**").

8.  On his *Schedule C: The Property You Claim as Exempt* as amended on January 13, 2021 [Doc. No. 46 at page 14 of 42], Debtor scheduled a homestead exemption in the Property of $21,500.00 under O.C.G.A. § 44-13-100(a)(1).

### Alleged Liens, Interests and Encumbrances

9.  On his *Schedule D: Creditors Who Have Claims Secured by Property* as amended on January 13, 2021 [Doc. No. 46, pages 16-17 of 42], Debtor scheduled three (3) claims on or against the Property in the amounts of (a) $182,177.00 in favor of Pennymac Loan Services, (b) $831.56 in favor of Stoney Creek Estates, HOA, Inc., and (c) $4,063.00 in favor of Georgia Department of Revenue for a tax lien.

### Request for Authority to Employ Realtor

10. Based on a thorough inspection, evaluation and comparative marketing analysis by a licensed real estate broker, Trustee has determined that the Property should be marketed for sale at a listing price of $252,500.00. Based on the value of the Property, there appears to be significant equity in the Property to benefit the Bankruptcy Estate if the Property were sold by Trustee.

11. Accordingly, Trustee requests authority from the Court to employ Humphries & King as his listing agent in the proposed sale of the Property under a listing agreement effective through and including October 30, 2021 (the "**Listing Agreement**"), which may be extended if necessary, starting at a list price of $252,500.00, with a six (6%) percent commission of the selling price. The Listing Agreement is attached hereto, marked as Exhibit "A," and incorporated herein by reference.

12. Any contract for sale of the Property will be subject to Bankruptcy Court approval following the filing of a motion under 11 U.S.C. § 363.

13. The affidavit of John V. Ball regarding the matters set out in this Application is attached hereto as Exhibit "B" and incorporated herein by reference.

14. Humphries & King does not represent any interest adverse to the Bankruptcy Estate and is a disinterested person as that term is defined under 11 U.S.C. §101(14). Humphries & King has no current relationship with Trustee or Debtor.

15. The employment of Humphries & King as the listing agent to sell the Property pursuant to the terms of the Listing Agreement is in the best interest of the Bankruptcy Estate.

16508056v1

WHEREFORE, Trustee prays that this Court grant authority to employ Humphries & King as his listing agent to sell the Property pursuant to the Listing Agreement and for such other and further relief as is just and proper.

Respectfully submitted this 30th day of April, 2021.

                                        ARNALL GOLDEN GREGORY, LLP
                                      *Attorneys for Trustee*

                                      By:*/s/ Michael J. Bargar*
                                           Michael J. Bargar
                                           Georgia Bar No. 645709
                                           michael.bargar@agg.com

171 17th Street, N.W.
Suite 2100
Atlanta, Georgia 30363-1031
(404) 873-7030

16508056v1

**EXHIBIT "A" FOLLOWS**

dotloop signature verification:

# EXCLUSIVE SELLER BROKERAGE ENGAGEMENT AGREEMENT


GeorgiaREALTORS®

2021 Printing

State law prohibits Broker from representing Seller as a client without first entering into a written agreement with Seller under O.C.G.A. § 10-6A-1 et. seq.

## A. KEY TERMS AND CONDITIONS

1. **Exclusive Seller Brokerage Engagement Agreement.** For and in consideration of the mutual promises contained herein and other good and valuable consideration, the undersigned seller(s) ("Seller") and the undersigned broker ("Broker") do hereby enter into this Exclusive Seller Brokerage Engagement Agreement ("Agreement") for Broker to exclusively list the property described below ("Property") for sale on the terms and conditions set forth herein.

    a. Property Identification: Address: 1162 Lehavre Court
    City Hampton, County Clayton County, Georgia, Zip Code 30228
    Tax Parcel I.D. Number: 05113B D023

    b. Legal Description: The legal description of the Property is [select one of the following below]:
    
    ☐ (1) attached as an exhibit hereto;
    
    ☐ (2) the same as described in Deed Book _____, Page _____, et. seq., of the land records of the above county; OR
    
    ☐ (3) Land Lot(s) _____ of the _____ District, _____ Section/GMD, Lot 132, Block _____, Unit _____, Phase/Section _____ of Summergate At Stoney Creek Subdivision/Development, according to the plat recorded in Plat Book 10556, Page 16, et. seq., of the land records of the above county; OR
    
    ☐ (4) described below if Property is a condominium unit and a full unit legal description is to be used [NOT TO BE USED IF PROPERTY IS A FEE SIMPLE TOWNHOME]:
    Unit _____ of _____ Condominium ("Condominium"), located in Land Lot _____ of the _____ District of _____ County, Georgia, together with its percentage of undivided interest in the common elements of the Condominium, and its interest in the limited common elements assigned to the unit ("Unit"). The Condominium was created pursuant to the Declaration of Condominium for any Condominium ("Declaration"), recorded in Deed Book _____, Page _____, et seq., _____ County, Georgia records ("Declaration"), and shown and delineated on the plat of survey filed in Condominium Plat Book _____, Page _____, _____ County, Georgia records, and on the floor plans filed in Condominium Floor Plan Book _____, Page _____, _____ County, Georgia records.

2. **List Price and Listing Period.** The price at which the Property shall be listed for sale is $ $252,500 ("List Price"). The term of this Agreement shall begin on the date of 04/30/2021 ("Starting Date") and made available to the public on the date of 04/30/2021 ("Marketing Commencement Date") and shall continue through the date of 10/30/2021 ("Ending Date") ...ment of the parties or as provided for herein (hereinafter, "Listing Period").

3. **Marketing.** Broker agrees to file this listing with the following Multiple Listing Service(s): FMLS

4. **Commission.** [Select one or more of the following below.]
    a. Seller agrees to pay Broker the following commission ("Commission") at the closing of any Contract to Sell (as that term is hereinafter defined) of the Property as follows:
       ☑ 6 percent (%) of the sales price;
       ☐ $ _____;
       ☐ (other) _____
    
    b. Broker agrees to pay cooperating broker, if any,
       ☑ 3 % of the sales price;
       ☐ $ _____;
       ☐ (other) _____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH John Ball IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2021 by Georgia Association of REALTORS®, Inc.    F101, Exclusive Seller Brokerage Engagement Agreement, Page 1 of 8, 01/01/21

dotloop signature verification: [illegible]

c. **Commission Adjustment to Cooperating Broker:** There may be circumstances where Seller's Broker shall not pay the cooperating broker the Commission referenced in Section A.4(b) above. These circumstances and the Commission that shall be paid in such circumstances are as follows: _____

☐ Check if an additional page(s) is attached (in which event, the same are incorporated herein).

d. **Separate Commission on Lease.** If Seller leases the Property or enters into a lease/purchase agreement or a lease with an option to purchase agreement during this Agreement, Seller shall also pay Broker a separate leasing commission in the amount of $_____ and as follows: _____. Notwithstanding any provision to the contrary contained herein, the payment of a leasing Commission (including in lease/purchase transactions or lease with an option to purchase transactions) shall not relieve Seller from paying the Commission at the closing of a Contract to Sell, as provided elsewhere in this Agreement.

5. **Protected Period.** The length of Protected Period, as that term is herein defined, shall be <u>60</u> days.

6. **Agency and Brokerage.** The following are types of agency relationship(s) **NOT** offered by Broker:
☐ seller agency  ☐ buyer agency  ☐ designated agency  ☑ dual agency  ☐ sub-agency  ☐ tenant agency  ☐ landlord agency
Seller ☐ does or ☐ does not consent to Broker acting in a dual agency capacity, as that agency relationship is explained in Section B.6(b) below and in the CB01 ABCs of Agency. Seller expressly consents to Broker acting in any other agency relationship offered by Broker.

7. **Seller Has the Following Special Circumstances That Will Require Third-Party Approval Before Seller Can Do the Following:**
   a. **List the Property for Sale:**
      ☐ (1) **Bankruptcy:** Seller has filed for bankruptcy protection and this Agreement is made contingent upon the bankruptcy court authorizing the listing of the Property for sale.
      ☐ (2) **Divorce:** Seller has filed for divorce and this Agreement is made contingent upon the court having jurisdiction over the divorce action authorizing the listing of the Property for sale.
      ☑ (3) **Other (Please describe):** <u>Seller is a federal bankruptcy trustee who has never seen nor has any knowledge of the property. Seller makes no warranties or representations. Property is being sold as, where is, with all faults and subject Bankruptcy Court approval.</u>
   b. **Contract to Sell the Property:**
      ☐ (1) **Bankruptcy:** Seller has filed for bankruptcy protection. Any purchase and sale agreement for the sale of the Property will need to be conditioned upon the approval of the bankruptcy court.
      ☐ (2) **Divorce:** Seller has filed for divorce. Any purchase and sale agreement for the sale of the Property will need to be conditioned upon the approval of the court having jurisdiction over the divorce.
      ☐ (3) **Short Sale:** The sale of the Property will not generate sufficient proceeds to pay off the Broker's real estate commission and all mortgages or liens on the Property. Therefore, the purchase and sale agreement for the sale of the Property will need to be made contingent upon the mortgage lender(s) and other lien holders agreeing to take less than the face amount of what they are owed.
      ☐ (4) **Seller Not On Title:** Seller does not yet have title to the Property and the purchase and sale agreement for the Property ☐ will or ☐ will not need to be subject to Seller acquiring title to the Property.
      ☑ (5) **Other (Please describe):** <u>Upon Bankruptcy Court approval of the sale of the Property, Seller will execute a Trustee's Deed conveying title of the Property to the Purchaser(s).</u>

8. **Negotiation.** Seller ☑ does OR ☐ does not authorize the Broker to assist, to the extent requested by Seller, in negotiating the terms of and filling out a pre-printed form contracts for Seller's review and approval.

**B. CORRESPONDING PARAGRAPHS FOR SECTION A.**

1. **Exclusive Seller Brokerage Engagement Agreement.** Seller has the full authority to enter into this Agreement for the listing of Seller's Property for sale. This Agreement may not be amended except by the written agreement of Seller and Broker. The failure of the parties to adhere strictly to the terms and conditions of this Agreement shall not constitute a waiver of the right of the parties later to insist on such strict adherence. Seller is not a party to any other exclusive seller brokerage engagement agreement and all such previous agreements, if any, have expired and not been renewed. Seller acknowledges that Seller may have to pay a previous broker a real estate commission if Seller is subject to a current seller brokerage engagement agreement or has terminated a previous seller brokerage engagement agreement without the consent of the previous broker.

2. **List Price and Listing Period.**
   a. **List Price:** Seller agrees to list the Property for sale at the list price specified in this Agreement. The failure of the Property to be shown or sell at the list price may be an indication that the list price for the Property is too high.
   b. **Initial Listing Period When Property is Under Contract to Sell:** If the Property is under a Contract to Sell, as that term is defined below, during the Listing Period, but the Listing Period expires prior to the closing, then the Listing Period shall be automatically extended through the closing of the Contract to Sell.

dotloop signature verification: dtlp.us/5M9N-v2km-1NwD

c. **Extension:** If during the term of this Agreement, Seller and a prospective buyer enter into: 1) a real property purchase and sale agreement for the Property; 2) a contract to exchange property, including the Property; 3) an option contract for the sale of the Property; or 4) a contract to sell the shares or partnership or membership interests in the legal entity constituting Seller (hereinafter, collectively referred to in this Agreement as a "Contract to Sell") which is not consummated or closed for any reason whatsoever, then the Listing Period may be extended unilaterally by Broker for the number of days that Property was under the Contract to Sell (hereinafter, "Extension Period") by Broker providing written notice of the same to Seller within five (5) days of the Contract to Sell not being consummated but in no event later than prior to the expiration of this Agreement (hereinafter, "Notification Period"). If such written notice is not given before the end of the Notification Period, then the Extension Period for that transaction shall be deemed to have been waived by Broker.

3. **Marketing.**
   a. **Generally:** Broker is authorized to market and advertise Property for sale in any media of Broker's choosing, including the Internet and multiple listing services, and attempt to procure buyers for the Property in cooperation with other real estate brokers and their affiliated licensees. Seller acknowledges that in listing the Property in a multiple listing service, all members of multiple listing services and real estate related third parties will have access to Seller's listing information including images and recordings and the right to use all available technology to create, download, store, supplement and manipulate such listing information to assist Seller in the sale of the Property and for tracking and analyzing real estate transactions. As such, Broker may not always have control over aspects of the marketing of the Property. Any media created or purchased by Broker to be used in the marketing effort shall not belong to or be the property of the Seller and may not be copied, reproduced, or used by Seller or other third parties without the express written permission of the Broker. Seller warrants that any media provided or paid for by Seller is the property of the Seller. Seller agrees to indemnify the Broker for any claim by a third party related to the use of the provided media. Broker shall be allowed to use Seller provided materials, during the term of this Agreement, with any third-party for the purposes of marketing the property, and Seller acknowledges that Broker shall not be liable to Seller for the continued use of media by third-parties after the termination of the Agreement. Seller agrees not to place any advertisements on the Property or to advertise the Property for sale in any media except with the prior written consent of Broker. Broker is also hereby authorized to place Broker's "For Sale" sign on Property. If the Property is sold or a Contract to Sell the Property is entered into during the term of this Agreement, the Broker may advertise the Property (including images thereof) in any media of Broker's choosing as being "under contract" while a sale is pending and as being "sold" upon the closing of the Property (except nothing herein shall permit Broker to place a Sold sign on property no longer owned by Seller except with the written permission of the new owner). Seller acknowledges that buyers and other brokers may take photographs, videos and use other technology to capture images of the Property to assist in marketing the Property and helping buyers remember different properties. Seller agrees to remove any personal property prior to listing the Property of which Seller does not want images to be so captured.
   b. **Multiple Listing Service(s):** Broker agrees to file this Agreement with the above referenced Multiple Listing Service(s) within one (1) business day of the Marketing Commencement Date, which shall be the date the Property is made available to the public. Marketing of the property to the public includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays (including IDX and VOW), digital communications marketing (email blasts), multi-brokerage listing sharing networks and applications available to the general public. Seller acknowledges that the MLS(s) is/are not a party to this Agreement and is/are not responsible for errors or omissions on the part of Seller or Broker. Seller agrees to indemnify Service(s) from and against any and all claims, liabilities, damages or losses arising out of or related to the listing and sale of Property. Seller acknowledges that by virtue of listing the Property in MLS(s), all MLS(s) members and their affiliated licensees, will have access to Seller's listing information for the purpose of assisting Seller in the sale of the Property.
   c. **Consent of Seller to be Called:** If Seller is on a "Do Not Call List," Seller expressly consents to Broker calling Seller for any purpose related to the sale of the Property. This paragraph shall survive the termination of this Agreement.
   d. **Lockboxes:** A lockbox may be used in connection with the marketing of Property. There have been isolated instances of reported burglaries of homes on which lockboxes have been placed and for which the lockbox has been alleged to have been used to access the home. In order to minimize the risk of misuse of the lockbox, Broker recommends against the use of lockboxes on door handles that can be unscrewed from the outside or on other parts of the home from which the lockbox can be easily removed. Since prospective buyers and others will have access to Property, Seller agrees to either remove all valuables, prescription drugs and/or keys, or put them in a secure place.
   e. **No Marketing by Seller:** Seller is encouraged to communicate the availability of the Property for sale to friends and other acquaintances. However, since Broker has been hired to exclusively market and show the Property, Seller shall not, with respect to the sale of the Property, prepare and distribute marketing materials, hold open houses, put up signs regarding the Property, create websites for the Property, prepare flyers, brochures or videos or engage in other similar activities without the prior written consent of Broker.

4. **Commission.**
   a. **Obligation to Pay Commission:** In the event that Seller enters into a Contract to Sell or lease, lease/purchase, or lease with an option to purchase the Property or any portion thereof during the term of this Agreement with any buyer, seller agrees to pay Broker's Commission at the closing (regardless of whether the closing is during or after the term of this Agreement), and if applicable, Broker's Leasing Commission prior to the commencement of a lease, lease/purchase, or lease with an option to purchase.
   b. **Sharing of Broker's Commission with Cooperating Broker:** Broker shall share this commission with a cooperating broker, if any, who procures the buyer of Property by paying such cooperating broker at closing the percent (%) of the sales price of Property referenced above OR the flat amount referenced herein. There may be times when the Broker may not pay the cooperating broker the full amount of the commission as set forth in Section A.

dotloop signature verification: dtlp.us/?ADS-v2krv-fNwD

5. **Protected Period.** The Protected Period shall be the period of time set forth in this Agreement commencing upon the expiration or the unilateral termination of this Agreement by Seller during which Broker shall be protected for its Commission or Leasing Commission, as applicable. If this Agreement is unilaterally terminated by Seller without the consent of the Broker, the Protected Period shall be the number of days remaining on what would have been the original listing as of the date the Seller terminates the Agreement plus the number of days set forth as the Protected Period in Section A.5 of this Agreement. There shall be no Protected Period if Broker and Seller mutually agree to terminate this Agreement. In the event that during the Protected Period, Seller enters into a Contract to Sell or lease, lease/purchase, or lease with an option to purchase of all or any portion of the Property which during the term of this Agreement was submitted to, identified or shown to any buyer (either in person or virtually), was provided specific information about or inquired about the Property, either directly or through a broker working with the buyer, then Seller shall pay Broker at closing or the commencement of the lease, lease/purchase, or lease with an option to purchase, as applicable, the Commission or Leasing Commission set forth above.

Notwithstanding the above, if this Agreement expires (and is not unilaterally terminated by Seller) an exception to the above Commission obligations shall apply and no Commission or Leasing Commission, as applicable, shall be due, owing or paid to Broker if Seller enters into a Contract to Sell or lease, lease/purchase, or lease with an option to purchase all or any portion of the Property during the Protected Period by or through another licensed broker with whom Seller has signed an exclusive seller brokerage engagement agreement. This exception shall not apply if the Agreement is unilaterally terminated by Seller. The Commission rights and obligations set forth herein shall survive the termination of this Agreement.

For the purposes of this section, the term "Seller" shall include Seller, all member of the Seller's immediate family, any legal entity in which Seller or any member of Seller's immediately family owns or controls, directly or indirectly, more than ten percent (10%) of the shares or interests therein, and any third party who is acting under the direction or control of any of the above parties. For the purposes of this Agreement, the term "buyer" shall include buyer, all members of the buyer's immediate family, any legal entity in which buyer or any member of buyer's immediate family owns or controls, directly or indirectly, more than ten percent (10%) of the shares or interests therein, and any third party who is acting under the direction or control of any of the above parties.

6. **Agency and Brokerage.**
   a. **Broker's Policy on Agency:** Unless Broker has indicated elsewhere herein that Broker is not offering a specific agency relationship, the types of agency relationships offered by Broker are: seller agency, buyer agency, designated agency, dual agency, sub-agency, landlord agency, and tenant agency.
   b. **Dual Agency Disclosure:** *[Applicable only if Broker's agency policy is to practice dual agency and Seller has consented to Broker acting in a dual agency capacity.]* If Seller and a prospective buyer are both being represented by the same Broker and the Broker is not acting in a designated agency capacity, Seller is aware that Broker is acting as a dual agent in this transaction and hereby consents to the same. Seller has been advised that:
      (1) In serving as a dual agent, Broker is representing two parties, Seller and the buyer, as clients whose interests are or at times could be different or even adverse;
      (2) Broker will disclose all adverse, material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from either party which is not otherwise required to be disclosed by law;
      (3) Seller does not have to consent to dual agency. The consent of the Seller to dual agency has been given voluntarily in Section A and the Seller has read and understands this Agreement.
      (4) Notwithstanding any provision to the contrary contained herein, Seller hereby directs Broker, while acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position except as required by law.
      (5) Broker or Broker's affiliated licensees will timely disclose to each party the nature of any material relationship with other party other than that incidental to the transaction. A material relationship shall mean any actually known personal, familial, or business relationship between Broker and a party which would impair the ability of Broker to exercise fair and independent judgment relative to another client. The other party whom Broker may represent in the event of dual agency may not be identified at the time Seller enters into this Agreement. If any party is identified after the Agreement and has a material relationship with Broker, then Broker shall timely provide to Seller a disclosure of the nature of such relationship.
      (6) Upon signing this brokerage engagement with the dual agency disclosures contained herein, Seller's consent to dual agency is conclusively deemed to have been given and informed in accordance with state law, provided that Seller has consented to Broker acting in a dual agency capacity in Section A(6) above.
   c. **Designated Agency Disclosure:** *[Applicable only if Broker's agency policy is to practice designated agency.]* Seller does hereby consent to Broker acting in a designated agency capacity in transactions in which Broker is representing Seller and a prospective buyer, but where Broker assigns one or more of its affiliated licensees exclusively to represent the Seller and one or more of its other affiliated licensees exclusively to represent the prospective buyer.
   d. **No Other Adverse Agency Relationships:** Unless specified herein, Broker has no other known agency relationships with other parties which would conflict with any interests of Seller (except that Broker may represent other buyers, sellers, landlords, and tenants in buying, selling or leasing property).

7. **Special Circumstances.**
   a. The sale of Property is contingent upon a third party's approval as indicated above. It shall be Seller's responsibility to seek to fulfill any contingency or condition selected herein, if any, and ensure that the purchase and sale agreement is made subject to any such contingency or condition.

dotloop signature verification: dtlp.us/3MOS-v2km-fNwO

b. Broker agrees to keep confidential all information which Seller asks to be kept confidential by express request or instruction unless Seller permits such disclosure by subsequent word or conduct or such disclosure is required by law. Seller acknowledges, however, that buyer and buyer's broker may possibly not treat any offer made by Seller (including its existence, terms and conditions) as confidential unless those parties have entered into a Confidentiality Agreement with Seller.
c. Broker may not knowingly give customers false information.
d. In the event of a conflict between Broker's duty not to give customers false information and the duty to keep the confidences of Seller, the duty not to give customers false information shall prevail.

8. **Negotiation.** While Broker may assist Seller in negotiating the terms of a Contract to Sell, if Seller has elected to have Broker assist in this role, all decisions regarding price, terms and other conditions in a Contract to Sell shall still be made by Seller.

## C. OTHER TERMS AND CONDITIONS

1. **Seller's Property Disclosure Statement.** Georgia Law (O.C.G.A. §51-6-2) requires that a Seller disclose latent defects in the Property which could not be observed by Buyer upon a reasonable inspection of the Property. This is the case even if the Property is sold in "as-is" condition. Within three (3) days of the date of this Agreement, Seller agrees to provide Broker with a current, fully executed Seller's Property Disclosure Statement or Disclosure of Latent Defects & Fixtures Checklist. In addition, if any dwelling on the Property, or portion thereof, was constructed prior to 1978, Seller agrees, as required by federal law, to additionally provide Broker with a current fully executed Lead-Based Paint Disclosure Exhibit (GAR F316) within the same timeframe so that Broker may provide the same to buyers in accordance with federal law. Broker is hereby authorized to distribute the Seller's Property Disclosure Statement and any Lead-Based Paint Exhibit to buyers interested in Property. Seller agrees to promptly update any of the above-referenced disclosure documents through the Closing should any changes occur. [NO PROPERTY DISCLOSURE STATEMENT WILL BE PROVIDED. SEE EXHIBIT "A" SPECIAL STIPULATIONS.]

2. **Hazardous Conditions on Property.** Seller acknowledges that Seller owes a duty of reasonable care to keep the Property safe for prospective buyers and their agents who to view and inspect the Property. Among other things, this includes a duty to warn such invitees of dangerous conditions that would not be obvious to an invitee. Seller is encouraged to inspect the Property for hazardous conditions and correct and eliminate all such conditions. Seller agrees to indemnify and hold Broker harmless from and against any and all claims, causes of action, suits, and damages arising out of or relating to a person or persons being injured or harmed while on the Property.

3. **Limits on Broker's Authority and Responsibility.** Seller acknowledges and agrees that Broker:
   a. may show other properties to prospective buyers who are interested in Property;
   b. shall have no duty to inspect the Property or advise buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, and lead-based paint; inspection of the Property by a licensed home inspector, construction expert, structural engineer, or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant, or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of the Property, the propensity of the Property to flood, flood zone certifications, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Seller acknowledges that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Seller should seek independent expert advice regarding any matter of concern to Seller relative to the Property and this Agreement. Seller acknowledges that Broker shall not be responsible to monitor or supervise or inspect any portion of any construction or repairs to Property and that such tasks fall outside the scope of real estate brokerages services;
   c. shall owe no duties to Seller nor have any authority on behalf of Seller other than what is set forth in this Agreement;
   d. shall make all disclosures required by law;
   e. shall not be responsible for ensuring that Seller complies with the duties and deadlines contained in any Contract to Sell entered into by Seller and that Seller shall be solely responsible for the same; and
   f. shall be indemnified and held harmless by Seller from any and all claims, causes of action, or damages arising out of or relating to:
      (1) inaccurate and/or incomplete information provided by Seller to Broker;
      (2) earnest money handled by anyone other than Broker;
      (3) Seller's negligence or intentional wrongdoing;
      (4) any loss or theft of valuables, prescription drugs, keys, or other personal property, relating to the use of a lockbox or an open house resulting from Seller's failure to remove or secure the same;
      (5) the existence of undisclosed material facts about the Property or the transaction; and
      (6) any damages or injuries occurring on the Property as a result of dangerous or defective conditions on the Property or the failure to secure or restrain pets.
   g. shall have no authority to bind Seller to any Contract to Sell or give notices on behalf of Seller other than to forward, if requested by Seller, a notice signed by Seller pertaining to a real estate transaction. Under the standard GAR Purchase and Sale Agreement Forms, notice received by the Broker is deemed to be notice received by the Seller.

4. **LIMIT ON BROKER'S LIABILITY. SELLER ACKNOWLEDGES THAT BROKER:**
   a. SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF THE REAL ESTATE COMMISSION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMMISSION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO REAL ESTATE COMMISSION IS PAID TO BROKER, THAN A SUM NOT TO EXCEED $100; AND
   b. NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.

dotloop signature verification: dtlp.us/sMOs-v2knvl-NwD

5. **Disclosure of Potentially Fraudulent Activities** as required by the Georgia Residential Mortgage Fraud Act (O.C.G.A. § 16-8-100 et seq.)
   a. To help prevent fraud in real estate transactions, Seller does hereby give Broker permission to report any suspicious, unusual and/or potentially illegal or fraudulent activity (including but not limited to mortgage fraud) to:
      (1) Governmental officials, agencies and/or authorities and/or
      (2) Any mortgage lender, mortgage insurer, mortgage investor and/or title insurance company which could potentially be harmed if the activity was in fact fraudulent or illegal.
   b. Seller acknowledges that Broker does not have special expertise with respect to detecting fraud in real estate transactions. Therefore, Seller acknowledges that:
      (1) Activities which are fraudulent or illegal may be undetected by Broker; and
      (2) Activities which are lawful and/or routine may be reported by Broker as being suspicious, unusual or potentially illegal or fraudulent.

6. **Miscellaneous.**
   a. **Arbitration:** All claims arising out of or relating to this Agreement and the alleged acts or omissions of any or all the parties hereunder shall be ~~by arbitration in accordance with the Federal Arbitration Act 9 U.S.C. § 1 et. seq. and the rules and procedures of the arbitration company selected to administer the arbitration. Upon making or receiving a demand for arbitration, the parties shall work together in good faith to select a mutually acceptable arbitration company with offices in Georgia to administer and conduct the arbitration. If the parties cannot mutually agree on an arbitration company, the company shall be selected as follows. Each party shall simultaneously exchange with the other party a list of three arbitration companies with offices in Georgia acceptable to that party to administer and conduct the arbitration. If there is only one (1) arbitration company that is common to both lists, that company shall administer and conduct the arbitration. If there is more than one arbitration company that is common to both lists, the parties shall either mutually agree on which arbitration company shall be selected or flip a coin to select the arbitration company. If there is not initially a common arbitration company on the lists, the parties shall repeat the process by expanding their lists by two each time until there is a common name on the lists selected by the parties. The decision of the arbitrator shall be final and the arbitrator shall have authority to award attorneys' fees and allocate the costs of arbitration as part of any final award. All claims shall be brought by a party in his or her individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. Notwithstanding anything to the contrary contained herein, this agreement to arbitrate shall not apply to: (1) any claim regarding the handling and disbursement of earnest money; and (2) any claim of Broker regarding the entitlement to or the non-payment of a real estate commission hereunder.~~ Continued at the bottom of this page ...
   b. **Assignability:** As part of a sale of all or substantially all of the assets of Broker to another brokerage firm, Seller consents to this Agreement being assigned by Broker to the other brokerage firm. In such event, the assignee, upon consenting to the assignment, shall: (1) thereafter be responsible for performing all of the duties and responsibilities of the assignor under this Agreement; and (2) have all of the rights of assignor including the right to receive the commissions under the Agreement.
   c. **Attorney's Fees:** In the event this Agreement, or any provision therein, is enforced through or is the subject of a dispute resulting in litigation or arbitration, the prevailing party shall be entitled to recover its actual attorney's fees, reasonably incurred.
   d. **Broker:** Where the context indicates the term "Broker" shall include Broker's affiliated licensees.
   e. **Entire Agreement:** This Agreement represents the entire agreement of the parties with respect to listing of the Property for sale and is intended to supersede all prior written and verbal agreements of the parties hereto. No representation, statement, promise, or inducement not contained herein shall be binding on either party hereto. This Agreement shall be binding on the heirs of the Seller.
   f. **Fair Housing Disclosure:** Seller acknowledges that Broker is committed to providing equal housing opportunities to all persons and that Seller and Broker are obligated to comply with state and federal fair housing laws in selling the Property. Seller and Broker agree not to discriminate in the sale of the Property on the basis of race, color, religion, national origin, sex, familial status, disability, sexual orientation or gender identity.
   g. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form, he or she should consult an attorney. Provisions in the GAR Forms are subject to differing interpretations by our courts other than what the parties may have intended. At times, our courts may strike down or not enforce provisions in our GAR Forms, as written. No representation is made that the GAR Forms will protect the interests of any particular party or will be fit for any specific purpose. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.
   h. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.
   i. **Independent Contractor Relationship:** This Agreement shall create an independent contractor relationship between Broker and Seller. Broker shall at no time be considered an employee of Seller. Unless otherwise stipulated, all affiliated licensees of Broker are independent contractors of Broker.
   j. **No Imputed Knowledge:** Seller acknowledges and agrees that with regard to any property which Seller intends to sell, there shall be no knowledge imputed between Broker and Broker's licensees or between the different licensees of Broker. Broker and each of Broker's licensees shall be deemed to have only actual knowledge of such properties.

6. a. continued from above...

subject to the jurisdiction of the U.S. Bankruptcy Court, Norther District of Georgia, Atlanta Division, in re Donald Renaldo Whiting, III, Case No. 18-68507-LRC

dotloop signature verification: dtlp.us/5M9S-v2Km-I NwD

k. **Notices Between Seller and Broker:**
   (1) Communications Regarding Real Estate Transactions: Seller acknowledges that many communications and notices in real estate transactions are of a time sensitive nature and that the failure to be available to receive such notices and communications can have adverse legal, business and financial consequences. During the term of this Agreement, Seller agrees to remain reasonably available to receive communications from Broker.
   (2) Notices between Broker and Seller Regarding this Agreement: Seller and Broker agree that communications and notices between them regarding the terms of this Agreement shall be in writing, signed by the party giving the notice, and may be delivered in person or to any address, e-mail address and/or facsimile number to the person to whom the communication or notice is being given specifically set forth in this Agreement. It is the intent of the parties that those means of transmitting notices for which a party has not provided an address or number shall not be used for receiving notices and communications. For example, if a party has not provided an e-mail address in this Agreement, it shall mean that the party is not accepting notices or communications sent by this means.
l. **Referrals:** Seller hereby authorizes Broker to refer Seller to another real estate licensee or broker for brokerage or relocation services not related to the sale of the Property. Seller acknowledges and agrees that Broker may receive a valuable consideration for the referral.
m. **Statute of Limitation:** All claims of any nature whatsoever against Broker and/or their affiliated licensees, whether asserted in litigation or arbitration and sounding in breach of contract and/or tort, must be brought within two (2) years from the date any claim or cause of action arises. Such actions shall thereafter be time-barred.
n. **Survival:** The rights and obligations of Broker to a commission subsequent to the termination or expiration of this Agreement as set forth herein, the limitation of liability, the obligation to arbitrate and indemnify Broker and other similar provisions that by their terms are meant to protect Broker shall survive the termination of this Agreement.
o. **Third Party Vendors:** Broker may provide Seller with the names of vendors to perform services on behalf of Seller relative to real estate transactions involving Seller. Broker does not warrant or endorse the performance of any such vendor and the names of vendors are provided solely as a courtesy and starting point for Seller to identify possible vendors to perform services on behalf of Seller. Seller agrees to do his or her own due diligence regarding the skills, expertise and reputation of all such vendors performing services for Seller and the terms of all contracts with vendors (including whether there is a limitation of liability in such contracts). All decisions regarding which vendor to hire shall be solely that of Seller.
p. **Time of Essence:** Time is of the essence of this Agreement.

7. **Broker's and Seller's Duties.**
   a. **Broker's Duties to Seller.** Broker's sole duties to Seller shall be to:
      (1) make all disclosure required by law;
      (2) use Broker's best efforts to procure a buyer ready, willing, and able to purchase Property at the List Price (which amount includes the Commission herein) or any other price acceptable to Seller;
      (3) comply with all applicable laws in performing its duties hereunder including the Brokerage Relationships in Real Estate Transaction Act, O.C.G.A. § 10-6A-1 et. seq.; and
      (4) if selected in Section A(8) above, assist in negotiating terms or filling out pre-printed real estate purchase and sale agreements and/or counteroffers.
   b. **Seller's Duties.** Seller will do the following:
      (1) cooperate with Broker to sell the Property to prospective buyers and will refer all inquiries concerning the sale of Property to the Broker during the term of this Agreement;
      (2) make the Property available for showing at reasonable times as requested by Broker;
      (3) ~~provide Broker with accurate information regarding the Property (including information concerning all adverse material facts pertaining to the physical condition of Property);~~ SEE EXHIBIT "A" SPECIAL STIPULATIONS.
      (4) comply with all local, state and federal laws applicable to the sale of the Property; and  SEE ATTACHED EXHIBIT "A" SPECIAL STIPULATIONS.
      (5) carefully read all Contracts to Sell before signing them and comply with all duties and all time deadlines contained therein.

8. **Seller Default.**
   a. **Events Constituting a Seller Default.** Seller shall be in breach of this Agreement if Seller:
      (1) Terminates this Agreement prior to the end of the Agreement without the prior written agreement of Broker. Broker removing the listing from multiple listing service(s), taking down Broker's sign, ceasing to market the Property after this Agreement is unilaterally terminated by Seller and other similar activities shall not be evidence of the Broker's agreement to mutually terminate this Agreement, but shall instead merely be an acquiescence by Broker of the unilateral termination by Seller;
      (2) Defaults under any Contract to Sell the Property resulting in such contract not closing;
      (3) Agrees with a buyer of the Property to terminate a Contract to Sell without the consent of Broker; or
      (4) Refuses to accept a lawful, bona fide, written offer to purchase the Property meeting the following terms and conditions at a time when the Property is not otherwise under contract:
         (a) The purchase price in the offer, after deducting all fees, costs and contributions to be paid by the Seller (other than the real estate brokerage commission to be paid by Seller and the Seller's payment of ad valorem real property taxes through the date of closing) is for at least the full listing price set forth herein and is to be paid in cash or cash equivalent at the closing;
         (b) The offer is not subject to contingencies, conditions precedent, due diligence periods, or required terms other than those set forth herein;
         (c) The offer is not subject to Seller warranties or representations other than: (i) those warranties the Seller agrees to provide in any Seller's Property Disclosure Statement the Seller has filled out and made available to prospective buyers for inclusion in any offer, and (ii) the Seller warranting to convey good and marketable title (which for all purposes herein shall have the same meaning as set forth in the GAR Purchase and Sale Agreements) to the Property at closing by limited warranty deed; and

dotloop signature verification: dtlp.us/SMCS-x2Sm-FNwD

    (d) The date of closing in the offer is not less than thirty (30) days nor more than forty-five (45) days from the offer date. Notwithstanding the above, in the event there are multiple offers to purchase the Property meeting the above criteria, Seller shall not be in breach of this Agreement if the Seller first gives the prospective buyers a reasonable opportunity (not exceeding ten (10) days from the date of the first offer) to make their best offer to purchase the Property and Seller accepts one of the offers.

  b. **Broker Remedies for Seller Default.** Seller shall immediately pay Broker the Commission referenced herein for any of the Seller defaults above, except for Seller unilaterally terminating this Agreement prior to the end of the Listing Period (as the same may have been extended as provided for herein). With respect to this event of default, Seller's obligation to pay Broker its Commission shall be controlled by the Protected Period sections of this Agreement.

  c. **Seller Default.** In the event Seller defaults under this Agreement, Seller shall, in addition to its other obligations set forth elsewhere herein, immediately reimburse Broker for the out-of-pocket costs and expenses incurred by Broker and Broker's affiliated licenses in seeking to market and sell the Property. Such costs and expenses shall include, without limitation, printing, and copying charges, mileage at the highest rate allowed by the IRS as a business deduction and expenses to advertise the Property in various media. Seller shall also pay all costs, fees and charges for removing the listing from any multiple listing service. The payment of these costs, fees, charges and expenses by Seller shall not waive or limit Broker's right to assert any other claim, cause of action or suit (hereinafter collectively, "Claims") against Seller for Broker's Commission and /or other damages and shall not release Seller from such Claims. Notwithstanding the above, the amount of such fees, charges, costs and expenses paid by Seller to Broker hereunder shall be an offset against any Claim of Broker for a Commission. [ALL SELLER DEFAULT PROVISIONS SHALL BE SUBJECT TO BANKRUPTCY COURT APPROVAL.]

9. **WARNING TO BUYERS AND SELLERS: BEWARE OF CYBER-FRAUD.** Fraudulent e-mails attempting to get the buyer and/or seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, closing attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the seller's proceeds from the closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or seller wiring instructions. The buyer and/or seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and sellers should be on special alert for: 1) emails directing the buyer and/or seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

10. **Brochures.** Brochures referenced herein are prepared courtesy of GAR. The recommendations contained therein are general in nature and may not be applicable to the transaction reflected in this Agreement, and are not intended to either be exhaustive or specific advice that Seller should rely on without Seller first consulting with independent experts and professionals of Seller's own choosing to ensure that Seller is protected.

**The following Brochures have been received by the Seller(s):** (Check all that apply. Any box not checked means the Seller(s) has not received that brochure or other consumer information)

- ☐ GAR CB01 – The ABC's of Agency
- ☐ GAR CB04 – Lead Based Paint Pamphlet
- ☒ GAR CB07 – Mold Pamphlet
- ☒ GAR CB08 – EPA Home Buyer's and Seller's Guide to Radon Pamphlet
- ☐ GAR CB10 – Protect Yourself When Selling a House
- ☐ GAR CB28 – What Buyers and Sellers Should Know About Short Sales and Distressed Properties
- ☐ Other: _____
- ☐ Other: _____

11. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addenda conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:

- ☐ Legal Description Exhibit (F807 or other) "_____"
- ☐ Lead-Based Paint Exhibit (F316) "_____"
- ☐ Retainer Fee Exhibit (F149) "_____"
- ☒ Other: See attached Exhibit "A" - Special Stipulation
- ☐ Other: _____

dotloop signature verification: dtlp.us/iMOS-v2krn-fNwD

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph, shall control:
The contract will be transferred to the Trustee's forms after the completion of the due-diligence period and any and all other contingency periods. All previous versions of the contract shall be null and void at the time, including the GAR contract. The sale of the Property is subject to Bankruptcy Court approval. This is an as-is sale. Seller will make no repairs to the Property. The Property is sold with no disclosures.

☐ Additional Special Stipulations are attached.

BY SIGNING THIS AGREEMENT, SELLER ACKNOWLEDGES THAT: (1) SELLER HAS READ ALL PROVISIONS AND DISCLOSURES MADE HEREIN; (2) SELLER UNDERSTANDS ALL SUCH PROVISIONS AND DISCLOSURES AND HAS ENTERED INTO THIS AGREEMENT VOLUNTARILY; AND (3) SELLER IS NOT SUBJECT TO A CURRENT SELLER BROKERAGE ENGAGEMENT AGREEMENT WITH ANY OTHER BROKER.

## SELLER'S ACCEPTANCE AND CONTACT INFORMATION

**1 Seller's Signature** _/s/ [signature]_   Date: 4/30/2021
S. Gregory Hays, as and only as Trustee for the Bankruptcy Estate of Donald Renaldo Whiting, III, Case No. 18-68507-LRC
Print or Type Name

**2 Seller's Signature**
Print or Type Name    Date

Seller's Address for Receiving Notice

Seller's Address for Receiving Notice

Contact:
Pamela Bicknell at (404) 870-8618
Seller's Phone Number:  ☐ Cell  ☐ Home  ☐ Work
pamela.bicknell@agg.com
Seller's E-mail Address

Seller's Phone Number:  ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

☐ Additional Signature Page (F146) is attached.

## BROKER / BROKER'S AFFILIATED LICENSEE CONTACT INFORMATION

Humphries & King Realty
Brokerage Firm

_John Ball_ (dotloop verified 04/05/21 1:13 PM EDT AEQI-SAL7-NAWR-XHXV)
Broker/Affiliated Licensee Signature

John Ball    04/05/2021
Print or Type Name    Date

(404) 418-2772
Licensee's Phone Number    Fax Number

386751
GA Real Estate License Number

76339
MLS Office Code    Brokerage Firm License Number

Broker's Phone Number    Fax Number

830 Glenwood Ave., Suite 510-205, Atlanta, GA 30316
Broker's Address

John@HKAtlanta.com
Licensee's E-mail Address

REALTOR® Membership

RECEIPT OF A COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY SELLER.
The above Agreement is hereby accepted _____ o'clock _____.m. on the date of _____.

## Exhibit "A"

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any preceding paragraph, shall control:

1. The "Seller" of the Property means S. Gregory Hays, as and only as Trustee in Bankruptcy for the Estate of Donald Renaldo Whiting, III, Chapter 7 Case No. 18-68507-LRC.

2. Seller's Property Disclosure Statement and Official Wood Infestation Report. **Seller and Listing Broker have no specific knowledge and make no representations concerning the condition of the Property. Purchaser understands that the Property is being sold "AS IS"."WHERE IS.**

3. Seller warrants that Seller has title to the Property described herein and/or will have full authority to enter into this Agreement upon order of the Bankruptcy Court and that the information with respect to the Property as set out in this Agreement is true and correct to the best of the Seller's knowledge, it being understood that Trustee is a bankruptcy trustee who has no knowledge of the Property.

4. The parties hereto acknowledge that the Agreement and all terms, conditions, warranties and representations are subject to the approval (and not binding without such approval) of the U.S. Bankruptcy Court, Northern District of Georgia, Atlanta Division, in Chapter 7 Case No. 18-68507-LRC.

5. In the event Seller contracts to sell the Property to any buyer, the parties hereto acknowledge that any contract for sale of the Property is subject to and contingent upon approval of the U.S. Bankruptcy Court, Northern District of Georgia, Atlanta Division, in Chapter 7 Case No. 18-68507-LRC, and no commission shall be paid unless or until Bankruptcy Court approval and closing of the sale, at which time Trustee will execute a Trustee's Deed transferring the Property, free and clear of all liens, interests and encumbrances.

6. All parties agree that the closing shall take place no later than ten (10) days after the date the Court's Order approving the sale has been entered on the Court's Docket.

7. The closing attorney shall be such attorney as selected by Seller.

8. Earnest Money shall be at least two percent (2%) of the Purchase Price.

9. Seller will make no repairs to the Property.

10. In the event Seller sells or contracts to sell the Property to any buyer introduced to the Property by said broker within sixty (60) days after expiration of the listing period, then Seller shall pay the commission to said broker at the rate set herein at the closing on the sale or exchange of the Property subject to bankruptcy court approval.

_____  
Seller

_____  
Agent

1649661 3v1

**EXHIBIT "B" FOLLOWS**

16508056v1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 18-68507-LRC |
| | ) | |
| DONALD RENALDO WHITING, III, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |

**REAL ESTATE BROKER'S VERIFIED STATEMENT
PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2014 AND 5002**

The undersigned hereby declares under penalty of perjury:

1. I am a licensed real estate agent in the State of Georgia and am affiliated with Humphries & King Realty ("**Humphries & King**"), with offices located at 830 Glenwood Avenue, Suite 510-205, Atlanta, Georgia 30316. Humphries & King's Brokerage Firm License Number is H-76339.

2. Humphries & King has been asked to represent S. Gregory Hays, as Chapter 7 Trustee for the bankruptcy case of Donald Renaldo Whiting, III ("**Debtor**"), in the value evaluation and sale of that certain improved real property located at 1162 Lehavre Court, Hampton, Clayton County, Georgia 30228 (the "**Property**").

3. Humphries & King is experienced at providing opinions as to the valuation and at handling the sales of real property in the State of Georgia.

4. Humphries & King is to be compensated for its services as a real estate broker at six (6%) percent of the selling price of the Property, which may be shared with any selling agent involved in the sale of the Property, subject to Court approval after notice and hearing, which notice and hearing may be provided with the notice of the relevant sale of the Property.

16496583v1

5. Except as set forth herein, neither I nor Humphries & King has a connection within the scope of Bankruptcy Rule 2014 with Debtor, the creditors, or any party in interest in this bankruptcy case, or any attorney or accountant thereof.

6. Neither I nor Humphries & King are related to or have any connection within the scope of Bankruptcy Rules 2014 or 5002 with any Judge of the United States Bankruptcy Court, Northern District of Georgia. Moreover, neither I nor Humphries & King are related to or have any connection within the scope of Bankruptcy Rules 2014 or 5002 with any attorney, employee, or agent of the Office of the United States Trustee.

7. To the best of my knowledge, information, and belief, Humphries & King and I are disinterested persons as that term is defined under 11 U.S.C. § 101(14).

Dated this 28th day of April, 2021.

_____
John V. Ball, Sales Agent
Georgia Real Estate License No. 386751

16496583\1

## CERTIFICATE OF SERVICE

This is to certify that I have mailed a copy of the foregoing *Application to Employ Real Estate Agent Under Listing Agreement* by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery to:

Office of the U.S. Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

S. Gregory Hays
Hays Financial Consulting, LLC
2964 Peachtree Rd, NW, Suite 555
Atlanta, GA 30305

John V. Ball
Humphries & King Realty
830 Glenwood Avenue
Suite 510-205
Atlanta, GA 30316

E. L. Clark
Clark & Washington, LLC
Building 3
3300 Northeast Expressway
Atlanta, GA 30341

Donald Renaldo Whiting, III
1152 Lahavre Court
Hampton, GA 30228


This 30th day of April, 2021.

/s/ *Michael J. Bargar*
Michael J. Bargar
Ga. Bar No. 645709

16508056v1